UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHELE WOODS

VERSUS

STATE OF LOUISIANA

CIVIL ACTION

NO. 07-913

## RULING ON MOTION FOR SUMMARY JUDGMENT

Defendant, the State of Louisiana, brings this motion for summary judgment. Doc. 31. Plaintiff, Michele Woods ("Woods"), has filed an opposition. Doc. 44. The defendant has filed a reply brief and plaintiff has filed a surreply. Docs. 47 and 50. Jurisdiction exists pursuant to 28 U.S.C. § 1331. Oral argument with respect to this motion is not necessary.

### Background

Woods filed this lawsuit against the State of Louisiana alleging sexual harassment and retaliation. This action allegedly arises from "pervasive sexual harassment" by Woods' immediate supervisor, Felix Ofili ("Ofili"), the cardiopulmonary director at the Earl K. Long Medical Center in Baton Rouge. Woods alleges that beginning in December of 2005 and continuing through June of 2006, Ofili made unwanted sexual advances and showed her preferential treatment. Specifically, plaintiff alleges that Ofili offered to bring her breakfast, would take her to departmental meetings even though she was not a part of management, brought her roses, repeatedly touched her arm and told her he would marry her, suggested 2-3 times that they go to a motel together, asked if he could put her up in a motel, called her cell phone almost daily, and

1

invited her to social functions.[1] Woods asserts that such advances alienated her from the rest of the staff and that she "began to seek ways to avoid coming into work such as taking sick leave and vacation and she would leave earlier than usual."[2]

Woods also alleges that she made one complaint to Steve Winkler ("Winkler"), whom she believed was Ofili's boss, and that Winkler sent her to human resources to file a formal complaint, which she did on June 19, 2006. Woods alleges that she was fired on July 3, 2006 in retaliation for making this complaint.

## Analysis

### Hostile Work Environment

To assert a prima facie case of hostile work environment, the plaintiff employee must normally show that:

> (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment (i.e. that the sexual harassment was so pervasive or severe as to alter her conditions of employment and create an abusive working environment); and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[3]

Defendant argues that the alleged harassment was not so severe or pervasive as to alter a condition of Woods' employment. In opposition, Woods asserts that the cumulative effect of Ofili's behavior was to create a hostile work environment.[4] Plaintiff

---

[1] Complaint, Doc. 1.
[2] Complaint, Doc. 1.
[3] Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996). However, when the harassment is committed by a supervisor with immediate authority over the plaintiff, as plaintiff alleges here, plaintiff need only satisfy the first four elements. Stewart v. May Dept. Stores, 294 F.Supp.2d 841, 846 (M.D. La. 2003).
[4] Plaintiff also points out to this Court, presumably to establish she was in a less than comfortable situation to begin with, that she was a probationary employee of defendant who had been recently displaced from New Orleans post-Katrina.

correctly argues that the entire context surrounding Ofili's behavior must be considered when determining whether a hostile work environment exists. As the Supreme Court has explained:

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance…while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.[5]

This analysis of the total environment "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target."[6] While the severity of the alleged conduct "should be judged from the perspective of a reasonable person in the plaintiff's position," the Supreme Court has warned against allowing Title VII to expand "into a general civility code."[7]

Defendant cites a number of cases in which it argues conduct more offensive than that alleged by plaintiff was not found to result in a hostile work environment.[8] Plaintiff counters that these cases are inapplicable because they do not deal with the same duration, five-and-a-half months, or frequency, especially touching on her upper arms 20-30 times a day, as that alleged here. Further, plaintiff asserts that the "sexually saturated" office,[9] combined with the closeness of the working quarters and "unchecked

---

[5] Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).
[6] Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998).
[7] *Id*.
[8] In support of its motion, defendant cites many cases from other circuits. Because the contours of a hostile work environment claim have been discussed repeatedly by the Fifth Circuit, this Court will consider plaintiff's claims in light of Fifth Circuit precedent.
[9] Plaintiff asserts that in addition to Ofili's behavior, another employee, Ms. Hicks, engaged in sexual banter. In opposition to defendant's motion for summary judgment, plaintiff asserts that Ms. Hicks "brought articles from sex magazines to the office," would "assess the sizes of penises of men who visited the office," asked one of the

rumors" of intimacy produced an environment in which Ofili's behavior should be considered even more severe. Plaintiff argues that unwanted gifts and "rumors designed to annoy and isolate are part of actionable harassment, if gender-related."[10]

Defendant further argues that the declarations of Woods' co-workers show that rather than being the subject of unwanted sexual advances, plaintiff engaged in a mutual flirtation with Ofili and at times appeared to initiate such flirtation.[11] Plaintiff states in her opposition that there was no mutual flirtation and that "mere apparent participation does not disqualify a plaintiff from protection."[12] While this may be true, if defendant is correct in its assertion that plaintiff was an equal participant in the flirtation and welcomed Ofili's advances, she will not be able to establish a hostile work environment. However, given the factual nature of this dispute, this Court finds that the nature and existence of the asserted "mutual flirtation" is a question better left to a jury.

Viewing the alleged behavior in a light most favorable to the plaintiff then, this Court considers Ofili's alleged actions in the context of Fifth Circuit precedent. In

---

doctors "about his sexual practices with his wife," and persuaded a doctor to perform a vaginal exam on another woman in order to "tempt him into having sex with [her]."

[10] Doc. 42, page 9.

[11] In declarations submitted in support of defendant's motion for summary judgment, Woods' co-workers indicated their belief that plaintiff engaged in mutual flirtation with Ofili which was sometimes initiated by Woods. Deborah Harrell stated that Woods "brought sexually suggestive materials to the workplace and discussed her dating preferences. She even referred to Ofili by a pet name, 'Fu-Fu.'" Doc. 32-3, ¶ VII. Voncile Radley stated that "Woods frequently took extended lunches with Ofili." Doc. 32-4, ¶ VII. Sandra Dawson stated that Woods "brought sexually suggestive materials to the workplace, displayed her brassiere to co-workers in Ofili's presence, and discussed her dating preferences. She frequently took extended lunches with Ofili. She even referred to him by a pet name, 'Fu-Fu.'" Doc. 32-5, ¶ VII. All three co-workers stated that they saw Woods and Ofili sitting next to one another with their knees touching. Docs. 32-3, 32-4, 32-5, ¶ VIII.

[12] Doc. 42, page 7. In support of this assertion, plaintiff cites *Ptasnik v. City of Peoria, Dept. of Police*, 93 Fed. Appx. 904 (7th Cir. 2004). There, the Seventh Circuit stated that "plaintiff's conduct [of also using vulgar language] is relevant only if she manifested 'enthusiastic receptiveness to sexually suggestive jokes and activities,' indicating that the conduct was welcome." *Id*. at 909.

*Farpella-Crosby v. Horizon Health Care*,[13] the court found a hostile work environment existed after plaintiff's supervisor made a number of comments attributing plaintiff's large number of children to her sexual proclivity and frequently inquired about her sexual activity.[14] Similarly, in *Harvill v. Westward Communications, LLC*,[15] the court found that plaintiff's allegations that defendant commented about plaintiff's sex life, grabbed her and kissed her on the cheek, popped rubber bands at her chest, and touched her breasts or buttocks numerous times throughout a seven month period were sufficient to preclude summary judgment for the defendant.[16]

Unlike the result in *Farpella-Crosby* and *Harvill*, in *Jacobi v. Federal Express Services Corp.*,[17] the court found that defendant's actions were not severe or pervasive enough to constitute a hostile work environment. There, defendant told plaintiff he

> "liked" her and asked her to go to dinner and/or drinks;…suggested that she "drop [her] pants" if he won a game of pool; intentionally sat next to her at a crowded table during a company dinner and placed his leg next to hers; and while on a sales call with her, he nudged her foot on at least two occasions and mouthed the word "bitch."[18]

---

[13] 97 F.3d 803, 806 (5th Cir. 1996).
[14] *Id*. at 805.
[15] 433 F.3d 428, 435 (5th Cir. 2005).
[16] Similarly, in *Harper v. City of Jackson Municipal School District*, 149 Fed. Appx. 295, 2005 WL 2404813 (5th Cir. 2005), the court stated that plaintiff's "allegations that [supervisor] subjected her to sexual propositions, sexual comments, and offensive physical contact *are* sufficient to create a genuine issue of material fact on whether she faced sufficiently severe or pervasive sexual harassment." *Id*. at *3. Likewise in *Waltman v. International Paper Co.*, 875 F.2d 468 (5th Cir. 1989), the court found plaintiff had alleged sufficient facts to raise a material issue as to her hostile work environment claim. There, plaintiff alleged that her supervisor had "pinched her buttocks with pliers and tried to put his hands in her back pockets…often made sexually suggestive comments…for example, 'I would like a piece of that,'" and "received over thirty pornographic notes in her locker." Further, "sexually explicit pictures and graffiti were drawn on the walls of the powerhouse, on the restroom walls and in the elevator. Some of these drawings were directed at [plaintiff]" *Id*. at 471.
[17] 2005 WL 1645774 (July 13, 2005).
[18] *Id*. at *10.

Similarly, the Fifth Circuit did not find a hostile work environment existed in *Shepherd v. Comptroller of Public Accounts of the State of Texas*,[19] despite defendant's attempts to look down plaintiff's clothing, rubbing of plaintiff's arms, and remarks that plaintiff's "elbows [were] the same color as [her] nipples," that she had "big thighs," and that she could find her seat in his lap after she came into a meeting late on two occasions.

While perhaps not as egregious as the behavior at issue in *Farpella-Crosby* or *Harvill*, the behavior alleged by plaintiff here seems closer to those cases than *Shepherd* or *Jacobi*. While Ofili's remarks were not sexually explicit, they were frequent and clearly based on plaintiff's gender. Similarly, Ofili's alleged statements that he wished to marry plaintiff indicate that his touching her arm was motivated by gender. As such, these "non-sexual" acts should be considered as part of the overall environment experienced by plaintiff. Further, it is possible that the close working environment and alienation due to Ofili's attentions made the five-and-a half month experience more severe. Accordingly, this Court finds a genuine issue of material fact exists as to whether Ofili's behavior was so severe or pervasive as to create a hostile work environment.

**The State's *Faragher/Ellerth* Defense**

A defending employer may assert an affirmative defense to liability or damages arising from an actionable hostile work environment when it shows: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take

---

[19] 168 F.3d 871, 872 (5th Cir. 1999).

advantage of any preventative or corrective opportunities by the employer or to avoid harm otherwise."[20]

Defendant argues that it had in place a harassment policy, which plaintiff received. The policy sets out that an employee should report harassment to their "supervisor as well as to the Human Resources Department."[21] Defendant asserts, without explanation, that "Woods failed to take advantage of this procedure, and for this reason, her claim of continuing harassment should be dismissed."[22] However, Woods clearly alleges and even defendant's summary judgment evidence indicates that Woods verbally reported the alleged harassment to Steven Winkler, the director of auxiliary services, on June 19, 2006 and then met with Joetta Brown, the Director of Human Resources and thereafter filed a written complaint.[23] Defendant fails to explain how plaintiff's actions fall short of the prescribed procedure. Thus, this Court finds that plaintiff did not unreasonably fail to take advantage of corrective opportunities available from her employer.

In opposition, plaintiff argues that a *Faragher/Ellerth* defense is not available to defendant because the defendant has not shown it took reasonable steps to prevent the harassment. Plaintiff argues that there is no indication that Ofili was instructed in harassment policies and that defendant knew Ofili had been accused of harassment in

---

[20] Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998).
[21] Doc. 31, page 13.
[22] *Id*.
[23] *See* declaration of Steven Winkler, Doc. 32-6, ¶ VI; declaration of Joetta Brown, Doc. 32-7, ¶ IX. Ms. Brown then conducted an investigation into plaintiff's complaint during which she interviewed plaintiff's co-employees. According to Ms. Brown, the investigation did not substantiate Woods' claims and revealed instead a mutual flirtation and other unrelated instances of plaintiff's misconduct. Declaration of Ms. Brown, Doc. 32-7, ¶ XII & XV.

the past but failed to conduct additional training with him.[24] Joetta Brown, Director of Human Resources at the hospital, states in her declaration that "[t]he Sexual Harassment Policy is reviewed with all new employees at their initial orientation."[25] Given that no specific evidence has been submitted that supports plaintiff's arguments,[26] this Court will not foreclose the possible application of defendant's affirmative defense based on plaintiff's conclusory arguments and negative inferences.

**Retaliation**

To establish a prima facie retaliation claim,[27] a plaintiff must show that (1) she engaged in Title VII protected activity; (2) defendant carried out an adverse employment action; and (3) there was a causal connection between plaintiff's protected activity and defendant's adverse action.[28]

This Court has previously found that Woods' verbal complaint to Winkler and subsequent verbal and written complaint to Brown constitutes protected activity and that plaintiff's termination constitutes an adverse action.[29] Defendant argues that no causal

---

[24] Doc. 42, page 15.
[25] Doc. 32-7, ¶ VI. This is also asserted by Clay Dunaway who was acting Chief Financial Officer at LSU Health Care Services Division at the time; Woods' co-employees Deborah Harrell, Voncile Radley, and Sandra Dawson; and Steven Winkler, Director of Auxiliary Services at LSU Health Care Services Division at Earl K. Long Medical Center.
[26] Ofili's personnel file is not before the court, nor does any affiant state that Ofili was not trained regarding defendant's sexual harassment policy or that defendant was aware of alleged prior harassment.
[27] 42 U.S.C. § 2000e-3(a) prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."
[28] Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005).
[29] See Ruling on Motion to Dismiss, Doc. 24. Defendant also argues that no protected activity occurred in this instance because plaintiff "cannot be said to have an objectively reasonable belief that [she] opposed an unlawful employment practice when his opposition is based on conduct that is not proscribed by Title VII." Doc. 31, page 15. This Court finds that plaintiff's belief that she was complaining of a hostile work environment was not objectively unreasonable and that defendant's argument in this regard is unpersuasive. This Court also notes that plaintiff is not required to show that Ofili's conduct was actually unlawful; rather, Woods only must evidence a reasonable

connection exists between the protected activity and adverse action in this case because plaintiff was terminated for taking excessive lunch breaks without clocking out and two instances of sleeping on the job. Defendant further asserts that these instances of misconduct were only discovered after it began its investigation of plaintiff's complaint of discrimination. In response, plaintiff argues that defendant's termination reasons are pretextual. She asserts she attended extensive lunches with her supervisors and was instructed to take a nap prior to driving home to New Orleans. Plaintiff further argues that she did not take a nap at that time. Given the close temporal proximity between plaintiff's protected action and termination[30] as well as the factual dispute regarding plaintiff's other alleged misconduct, this Court finds a genuine issue of material fact exists with regard to the cause of plaintiff's termination.

---

belief that Ofili's "alleged conduct was unlawful; it does not matter whether his conduct in fact was such a violation." Brown v. Louisiana Lottery Corp., 240 F.Supp.2d 590, 595 (M.D. La. 2002).

[30] The Supreme Court in *Clark County School Dist. V. Breeden*, 532 U.S. 268, 273 (2001) noted:
> The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporally proximity must be "very close," *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (C.A. 10 2001). See *e.g. Richmond v. ONEOK, Inc.*, 120 F.3d 204, 209 (C.A. 10 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (C.A. 7 1992) (4-month period insufficient).

While no causal connection was found in *Clark County* or the cases cited by the Court therein, "the Fifth Circuit has found causal connection when two months separated the protected activity and the adverse employment action and there was evidence that the employer's proffered reason for the adverse employment action was pretextual." Kimble v. Georgia Pacific Corp., 245 F.Supp.2d, 862, 877 (M.D. La. 2002) (citing Mota v. Univ. Tex. Houston Health Sco. Ctr., 261 F.3d 512, 521-522 (5th Cir. 2001)). Here, the temporal proximity is much closer than two months.

**Conclusion**

For the reasons discussed above, defendant's motion for summary judgment (doc. 31) is DENIED.

Signed in Baton Rouge, Louisiana, on July 14, 2009.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**